Case 4:23-cv-04387   Document 34   Filed on 06/25/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
June 25, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SUZANNE STEWART, § | |
| § | |
| *Plaintiff,* § | |
| VS. § | CIVIL ACTION NO. 4:23-cv-4387 |
| § | |
| CITY OF ARCOLA, § | |
| § | |
| *Defendant.* § | |

## ORDER

Pending before the Court is Suzanne Stewart's ("Plaintiff") Motion for Partial Summary Judgment. (Doc. No. 23). City of Arcola ("Defendant") responded in opposition. (Doc. No. 25). Plaintiff did not file a reply. Having considered the motion, relevant pleadings, summary-judgment evidence, and applicable law, the Court **DENIES** the motion. (Doc. No. 23).

### I. Background

This is a gender discrimination and retaliation suit against the City of Arcola. Plaintiff began her employment with the City of Arcola as a reserve officer in the Arcola Police Department on October 23, 2020. (Doc. No. 26-1 at 1). In that capacity, Plaintiff had multiple supervisors, including the Chief of Police, Raymond Stewart ("Chief Stewart"), and the Mayor, Fred Burton ("Mayor Burton"). (*Id.*). Chief Stewart is also Plaintiff's husband. (*Id.*). Moreover, Chief Stewart and Mayor Burton "were close personal friends well before [Chief Stewart and Plaintiff] got married," so much so that the Stewarts "have been to Fred Burton's house before for parties." (*Id.*).

On at least two occasions, Mayor Burton allegedly called Plaintiff "overweight lover." While the exact date is unclear, one such occasion was before on or before June 3, 2021. On June 3, 2021, Plaintiff sent an email to Mayor Burton complaining of the comment.[1] (Doc. No. 26-4 at

---
[1] The contents of that email are unknown to the Court.

151:2–8); (Doc. No. 26-1 at 2). In response, Mayor Burton allegedly accused Plaintiff of trying to "make a paper trail against him." (Doc. No. 26-1 at 2). At other times, Plaintiff declares in her affidavit, Mayor Burton would make "threatening" comments, such as "You need this job, don't you?" and "You need insurance from this job, right?" The second and the last instance of the "overweight lover" comment was on November 12, 2021, during the City's annual barbecue cook-off. (*Id.* at 3). This time, however, it was said on a microphone in front of approximately 200 to 300 people when announcing Plaintiff's team had won the barbecue competition. (*Id.*); (Doc. No. 26-2 at 3).

As Plaintiff and Chief Stewart swear in their affidavits, this was not the extent of Mayor Burton's comments to women. For example, in July 2021, Mayor Burton allegedly commented, in front of Plaintiff, that "[he]'d bump that bunny" about then-Sergeant, later-Chief of Police Arika Carr ("Sergeant Carr"). (Doc. No. 26-1 at 2). Plaintiff also witnessed Mayor Burton ask Sergeant Carr, who was pregnant at the time, "How long do I have to see you looking like that?" (*Id.* at 3). Moreover, Plaintiff and Chief Stewart both independently swear that Mayor Burton referred to an employee named Tamara Alex as "an old dinosaur bitch." (*Id.*); (Doc. No. 26-2 at 3). In the Fall of 2021, Mayor Burton issued a directive that women could not work night shifts because "it was too dangerous for women to work at night." (Doc. No. 26-1 at 3); (Doc. No. 26-2 at 2); (Doc. No. 26-4 at 209:15–18).

Between November 15 and 19, 2021, a week or so after the public "overweight lover" comment at the barbecue cook-off, Plaintiff "verbally made an official report to Chief Raymond Stewart for Fred Burton sexually harassing [her]." (Doc. No. 26-1 at 3). "Sometime [sic] before the last week of November of 2021, but before Friday December 3, 2021," Chief Stewart "relayed [Plaintiff's] sexual harassment complaint to Mayor Fred Burton." (Doc. No. 26-2 at 3). In

2

response, Mayor Burton stated, "You need to fix that. She's your wife." (*Id.*). Chief Stewart swears that he "made it clear in this conversation with Fred Burton that [Plaintiff] was reporting a sexual harassment as an employee of the City of Arcola." (*Id.*). On December 13, 2021, about a week after that conversation between Chief Stewart and Mayor Burton, Chief Stewart was discharged as the Chief of Police for the City of Arcola. (*Id.* at 4). In the meeting to announce Chief Stewart's discharge, Mayor Burton allegedly stated to Arcola police officers, "I am removing the Stewart umbrella of protection. I'm the Chief now. Stewart keeps telling me not to say stuff, but I'm the mayor, and I'm the chief." (*Id.*); (Doc. No. 22-1 at 53:24–54:15).

After that meeting, Plaintiff asked Mayor Burton to speak "Fred to Suzanne . . . on a personal level," given their friendship through Chief Stewart. (Doc. No. 22-1 at 55:1–2). Mayor Burton agreed to speak if Plaintiff would walk with him. (*Id.* at 55:3–5). In that conversation, Plaintiff stated, "You should be ashamed of yourself. How do you sleep at night? You're allowing your girlfriend to dictate how you handle the police department." (*Id.* at 55:11–16). That "girlfriend" referred to Dr. Annette Goldberg, the City Manager, with whom Plaintiff accused Mayor Burton of having an extramarital affair. (*Id.* at 63:1–12). Plaintiff swears in her affidavit that, in this conversation, she once again complained about "the way he talked to [her] and called [her] 'overweight lover.'" (Doc. No. 26-1 at 3).

The next day, on December 14, 2021, Mayor Burton terminated Plaintiff's employment as "a direct result of policy violations related to insubordination and [her] unprofessionalism." (Doc. No. 22-1 at 58:23–59:7).

Plaintiff filed suit in this Court alleging disparate treatment, hostile work environment,[2] and retaliation. (Doc. No. 1). The Court subsequently granted in part and denied in part

---

[2] While Plaintiff's Complaint does not specifically allege a hostile work environment claim, the Court "liberally construe[d] the complaint to state a hostile work environment claim under Title VII" due to its allegation that Burton's

3

Defendant's Motion to Dismiss, dismissing the disparate treatment claim but leaving in place the hostile work environment and retaliation claims. (Doc. No. 17). Defendant moved for summary judgment on the remaining claims, (Doc. No. 22), which is analyzed in a separate order. While Defendant's motion was pending, Plaintiff moved for partial summary judgment on defenses and affirmative defenses, only one of which Defendant raised. (Doc. No. 25).

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant.

---

behavior was "so severe or pervasive that it altered the conditions of [Plaintiff's] employment." *See* (Doc. No. 17 at 5 n.1) (Order on Motion to Dismiss).

4

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

Plaintiff moves for summary judgment on three defenses, affirmative or otherwise: (1) failure to exhaust administrative remedies; (2) after-acquired evidence; and (3) failure to mitigate damages. (Doc. No. 23). Only one of these—failure to mitigate damages—was raised in Defendant's answer.[3] *See* (Doc. No. 19-1, 31). The Court takes them in turn.

#### A. Failure to Exhaust Administrative Remedies & After-Acquired Evidence

Plaintiff "preemptively" moves for summary judgment on two defenses Defendant did not raise: failure to exhaust administrative remedies and after-acquired evidence. Defendant, in response, argues that "summary judgment would not be proper in this instance because Plaintiff's motion addresses *potential defenses* as opposed to a presentation of [Plaintiff's] own claims." (Doc. No. 25 at 3) (quoting *Gould, Inc. v. CNA*, 809 F. Supp. 328, 333 (M.D. Pa. 1992)) (emphasis in original).

This is an unusual posture, with little to no case law that speaks to whether preemptive summary judgments on defenses not raised by a defendant are authorized by the Federal Rules of Civil Procedure. This is demonstrated by the fact that the only applicable case law[4] Defendant cites

---

[3] Due to "calendaring errors," Defendant inadvertently had failed to file an answer in time. It subsequently sought leave to file an answer, (Doc. No. 19), which this Court granted and ordered the Clerk of Court to docket the Answer attached as Exhibit 1 to that Motion for Leave, (Doc. No. 30). The Answer was docketed at Doc. No. 31. This Motion for Partial Summary Judgment was filed after the Motion for Leave to File an Answer but before the Court ruled on the Motion for Leave, presumably relying on the Answer attached to that motion. Thus, while this Motion for Partial Summary Judgment may be premature, since the docketed Answer and the proposed Answer attached to the Motion for Leave are the same, the Court reaches the parties' arguments.

[4] Defendant also cites to a footnote *In re Sanco Holdings AS*, which states, "the Court is not inclined to grant summary judgment as to unasserted and unidentified potential claims." No. G-07-161, G-07-201, 2009 WL 962006, at *1 n.1 (S.D. Tex. Mar. 13, 2009) (Froeschner, M.J.). That Report and Recommendation, however, was subsequently withdrawn by Judge Froeschner in *Matter of Sanco Holdings AS*, No. G-07-161, G-07-201, 2009 WL 961998 (S.D. Tex. Apr. 6, 2009), and is no longer good law. Subsequent opinions in that case have not addressed the issue at hand.

is the Middle District of Pennsylvania case that is from outside this Circuit, but further cites to an older version of Rule 56(a), which authorized "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment" to move for summary judgment. *See Gould, Inc.*, 809 F. Supp. at 333; FED. R. CIV. P. 56(a) (1992). In that case, the court held, summary judgment is appropriate only when the movant is seeking affirmative relief. *Gould*, 809 F. Supp. at 333. The current version of the Rules, by contrast, lacks the affirmative-relief requirement. It states that "[a] party may move for summary judgement, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a) (2025). It is silent as to whether the claim or defense identified must be one actually asserted.

Nevertheless, albeit in a slightly different context, the Fifth Circuit has stated that "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). That is, in effect, the same posture as the one the Court faces here, only with defenses, not claims. These two defenses are not raised in the answer, but, rather, are addressed in response to a motion for summary judgment (of course, they are not "raised" in the motion for summary judgment itself because Plaintiff cannot raise Defendant's defenses on behalf of Defendant). Consequently, these defenses are not properly before the Court, and the Court declines to grant affirmative summary judgment in Plaintiff's favor on them. Plaintiff's Motion for Partial Summary Judgment is **DENIED without prejudice** as to these defenses.

### B. Failure to Mitigate Damages

The failure-to-mitigate defense, on the other hand, has actually been raised by Defendant. *See* (Doc. No. 31 at 1). "Successful Title VII claimants . . . have a corresponding statutory duty to

minimize such [back pay] damages." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). That statutory duty arises from 42 U.S.C. § 2000e-5(g)(1), which states, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1). As the statute indicates, the duty to mitigate in Title VII contexts applies when Plaintiff seeks back pay. *See Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 747 (S.D. Tex. 2014) ("Because an award of back pay is an equitable remedy designed to make the injured party whole, we are persuaded that an injured party has a duty under both § 1981 and Title VII to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages.").

Defendant argues that this defense is now moot "[b]ecause Plaintiff stipulated Plaintiff will not seek lost wages as a part of Plaintiff's claims." (Doc. No. 25 at 4). It cites to an email exchange between its counsel and Plaintiff's counsel. (Doc. No. 25-2). In that exchange, Plaintiff's counsel offers as follows: "If you're fine with not deposing her and getting the rest of her tax returns . . . then we won't pursue lost wages as damages." (*Id.* at 2). Defendant's counsel responded, "In light of your client's stipulation she will not seek any lost wages in connection with this lawsuit, we do not need to take her deposition and we do not need her 2023 tax return." (*Id.* at 1).

Given that Plaintiff has agreed to forego lost wages (of which back pay is a part), the Court agrees with Defendant that this defense is now moot by agreement of counsel. Consequently, the Court **DENIES as moot** Plaintiff's Motion for Partial Summary Judgment as to Defendant's failure-to-mitigate defense.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment. (Doc. No. 23). In summary, Defendant has not pleaded the defenses of failure to exhaust and after-acquired evidence, and so these defenses will play no role in this case. Defendant has withdrawn the failure-to-mitigate defense in response to an agreement with Plaintiff to forego seeking back pay/lost wages. Therefore, that defense is withdrawn as is any claim by Plaintiff for back pay and for lost wages.

It is so ordered.

Signed on this the 25th day of June, 2025.

_____
Andrew S. Hanen
United States District Judge